**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

YOEL ARIAS MATOS (A No. 244-764-812),

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY DETENTION CENTER,

Respondent.

Case No. 1:26-cv-07891-JLT-SAB

ORDER GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS; DENYING THE MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT; DENYING THE MOTION TO APPOINT COUNSEL AS MOOT; ORDERING PETITIONER'S IMMEDIATE RELEASE; AND DIRECTING THE CLERK OF COURT TO CLOSE THIS CASE

(Docs. 1, 2, 3)

## I. INTRODUCTION

Before the Court is Yoel Arias Matos's pro se request for a temporary restraining order (Doc. 3), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241 challenging his ongoing detention. (Doc. 1.) The government filed a response to the TRO and the underlying petition, asserting that the petitioner is subject to mandatory detention under 8 U.S.C. § 1225(a)(4) and 8 C.F.R. § 1235.4. (Doc. 8 at 2.) For the reasons explained below, the Court **GRANTS** the petition for writ of habeas corpus.[1]

[1] When the Court set a briefing schedule on the motion for TRO, it ordered the parties to state their position as to whether the motion for TRO should be converted to a preliminary injunction without further briefing, whether the parties sought a hearing on the motion, and whether the parties sought additional briefing on the merits of the habeas petition. (Doc. 6.) Neither Petitioner nor Respondent

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A.A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

## III. BACKGROUND

Petitioner is from Cuba. (Doc. 8-1 at 1.) On October 19, 2024, Petitioner arrived in the United States pursuant to a scheduled Customs and Border Protection appointment ("CBP One Appointment") and was encountered by immigration authorities. (*Id.* at 2.) That day, Department of Homeland Security issued a Notice to Appear charging the Petitioner as removable under 8 U.S.C. § 1182(a)(7)(A)(i)(I) and released him on humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5). (*Id.* at 2, 5–8.) For approximately two years, Petitioner lived freely in the United States. According to Petitioner, he applied for asylum and withholding of removal and obtained work authorization. (Doc. 3 at 2.) Petitioner also indicates that he has stable employment and maintains a stable residence. (Doc. 10 at 2.) Petitioner has no criminal history. (Doc. 8-1 at 3.)

On August 18, 2026, while working as a truck driver, Petitioner was stopped by Immigration and Customs Enforcement during a targeted enforcement action at a truck service area in New York. (Doc. 8-1 at 2.) According to the I-213, ICE agents "were conducting plain clothes surveillance" and "engaged in consensual encounters with multiple individuals that were entering their . . . truck at the service area." (*Id.*) After the ICE agents identified themselves as immigration officers, they questioned the individuals and determined that two of them were present in the United States unlawfully. (*Id.* at 2–3.) ICE then arrested the Petitioner and another individual. (*See id.* at 3.) Three days later, on August 21, 2026, DHS and Petitioner executed a

---

request a hearing or further briefing. (*See* Docs. 8, 10.) As such, the Court decides this case on the underlying habeas petition on the present record.

"Joint Motion for Withdrawal of Application for Admission and Termination of Removal Proceedings Without Prejudice" pursuant to 8 C.F.R. §§ 1235.4, 1240.1(d), and 1003.25(b). (Doc. 8-2 at 3–6.) That same day, the Immigration Judge granted the motion, withdrew Petitioner's "application for admission," terminated "removal proceedings without prejudice," and found that Petitioner was an "arriving alien." (*Id.* at 1–2.) As such, Petitioner is not currently in removal proceedings and has no order of removal in place. *See* EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/caseinformation (last visited October 23, 2026). Petitioner was subsequently transferred to the California City Detention Center, where he remains. (Doc. 1 at 1.)

On September 25, 2026, Petitioner filed a petition for writ of habeas corpus and motion for TRO, challenging his detention as unlawful under the Fifth Amendment Due Process Clause for lack of pre-deprivation notice and hearing; and seeking immediate release. (Doc. 1 at 2, 6–8; Doc. 3 at 2–8.) Petitioner further argues that the correct statute for his detention is 8 U.S.C. § 1226, not § 1225. (Doc. 1 at 7.) On October 5, 2026, Respondent filed an opposition, arguing that Petitioner is mandatorily detained under 8 C.F.R. § 1235.4, following his "voluntary withdrawal of his application for admission" pursuant to 8 U.S.C. § 1225(a)(4). (Doc. 8 at 1–3); 8 C.F.R. § 1235.4 ("An alien permitted to withdraw his or her application for admission shall normally remain in carrier or Service custody pending departure, unless the district director determines that parole of the alien is warranted in accordance with § 1212.5(b) of this chapter."). On October 16, 2026, Petitioner filed a reply. (Doc. 10.)

## IV. DISCUSSION

### A. The Framework Behind 8 U.S.C. § 1225(a)(4)'s Withdrawal of an Application for Admission

To begin, the Court provides an overview of the framework that allows an IJ to permit a noncitizen to withdraw their "application for admission." As the Ninth Circuit neatly explained:

> Before the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), both IJs and immigration officers exercised their discretion to permit aliens to withdraw their applications for admission based on case law and internal practices. *See Barajas-Alvarado*, 655 F.3d at 1088–90.

The BIA's precedential opinion, *In re Gutierrez*, 19 I&N Dec. 562 (BIA 1988), provided guidance to IJs exercising this discretion. *Gutierrez* involved an alien who attempted to enter the United States at San Francisco International Airport by means of a fraudulent document. *Id*. at 563. The IJ determined that the alien was excludable, but permitted him to withdraw his application for admission, citing as "positive considerations" the facts that the applicant was married to a lawful permanent resident who would become eligible for citizenship in one year, had a United States citizen child and was expecting a second, had no arrest or welfare record, and had been gainfully employed and was supporting his family. *Id*. at 563–64.

The BIA reversed, holding "that a balancing of the equities test is not an appropriate method by which to determine whether an alien merits permission to withdraw an application for admission." *Id*. at 564. Rather, the BIA determined that "[a]n immigration judge should not allow withdrawal unless an alien, in addition to demonstrating that he possesses both the intent and the means to depart immediately from the United States, establishes that factors directly relating to the issue of his admissibility indicate that granting withdrawal would be in the interest of justice (*i.e.,* that justice would be ill served if an order of exclusion was entered)." *Id*. at 564–65. Further, the BIA ruled that once an IJ has determined that an alien is excludable, permission to withdraw "should ordinarily only be granted with the concurrence of the Service." *Id*. at 565. Applying these principles to the case before it, the BIA held that "even if we were to disregard the applicant's attempted fraudulent entry, we can discern no facts or circumstances relevant to the issue of his admissibility which suggest that justice demands that he be allowed to withdraw his application for admission." *Id.*

When Congress enacted IIRIRA, it codified withdrawal of an application for admission as a form of discretionary relief. *See* 8 U.S.C. § 1225(a)(4). Section 1225(a)(4) provides that "[a]n alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." The agency subsequently promulgated regulations to implement § 1225(a)(4), *see* 62 Fed. Reg. 10,312, 10,313 (Mar. 6 1997), and adopted the standard the BIA had articulated in *Gutierrez* to govern an IJ's discretion to permit an alien to withdraw an application for admission. *See* 8 C.F.R. § 1240.1(d).

Under § 1240.1(d), an IJ may grant an alien's request for withdrawal only if: (1) the alien is an arriving alien; (2) the alien demonstrates that the alien "possesses both the intent and the means to depart immediately from the United States"; and (3) the alien "establishes that factors directly relating to the issue of inadmissibility indicate that the granting of the withdrawal would be in the interest of justice." § 1240.1(d). In addition, "[o]nce the issue of inadmissibility has been resolved," an IJ ordinarily should permit withdrawal only if DHS concurs in the alien's request. *Id.*

*United States v. Cisneros-Resendiz*, 656 F.3d 1015, 1019–20 (9th Cir. 2011).

### B. 8 U.S.C. § 1225(a)(4)'s Withdrawal Framework Does Not Apply to the Petitioner

Considering this framework, the Court rejects Respondent's argument that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(a)(4) and its corresponding regulations. (*See* Doc. 8 at 2.) As a threshold matter, the regulation Respondent cites as the basis for mandatory detention, 8 C.F.R. § 1235.4, is inapplicable to this case. (*Id.*); *see* 8 C.F.R. § 1235.4 ("The Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings under section 240 of the Act or expedited removal under section 235(b)(1) of the Act. . . <u>An alien permitted to withdraw his or her application for admission shall normally remain in carrier or Service custody pending departure, unless the district director determines that parole of the alien is warranted</u> . . .") (emphasis added). As the Ninth Circuit explained, 8 C.F.R. § 1235.4 applies when an immigration officer permits a noncitizen to withdraw their application for admission. *Cisneros-Resendiz*, 656 F.3d at 1020 n.9 ("Immigration officers are guided by a different regulation, 8 C.F.R. § 1235.4, as well as the Inspector's Field Manual) (citing *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1089–90 (9th Cir. 2011)). In this case, however, an Immigration Judge—not an immigration officer—granted Petitioner's request to withdraw his "application for admission." (*See* Doc. 8-2 at 1–2.) Therefore, 8 C.F.R. § 1240.1(d) controls. *Cisneros-Resendiz*, 656 F.3d at 1020.

Notably, 8 C.F.R. § 1240.1(d) says nothing about mandatory detention, but even if it did, the Court finds that Petitioner is *not* an "arriving alien" under 8 C.F.R. § 1240.1(d) or an "alien applying for admission" under U.S.C. § 1225(a)(4) for either provision to apply for purposes of detention. In defining what it means to be an "arriving alien" under 8 C.F.R § 1240.1(d), the Ninth Circuit explained: "'Arriving aliens' are a subset of the broader category of the 'alien[s] applying for admission' referenced in § 1225(a)(4); the term applies only to aliens who are (1) 'coming or attempting to come into the United States at a port-of-entry,' (2) 'seeking transit through the United States at a port-of-entry,' or (3) 'interdicted in international or United States

water and brought into the United States by any means.'" *See Cisneros-Resendiz*, 656 F.3d at 1020 n.10 (citing 8 C.F.R. § 1001.1(q)). Petitioner is not an "arriving alien" under § 1240.1(d) because he is not presently attempting to come into the country or seeking transit through a port-of-entry. Instead, Petitioner has been living in the United States for the past two years after he was apprehended at the border upon entry into the country and subsequently released on humanitarian parole on October 19, 2024. (*See* Doc. 3 at 2; Doc. 8-1 at 5.)

In rejecting a similar argument in *David R.F.*, this Court found that even if an IJ had granted the parties' joint motion to allow withdrawal of petitioner's "application for admission" pursuant to 8 U.S.C. § 1225(a)(4), that does not render petitioner subject to mandatory detention. *See David R.F. v. Warden, Golden State Annex Detention Facility*, *et al.*, 1:26-cv-04330-MWJS, 2026 WL 2365345, at *1, 3 (E.D. Cal. Aug. 14, 2026) (similarly dealing with a petitioner apprehended at a port of entry in 2024 and released on parole into the United States, who was then re-detained by DHS two years later, and subsequently executed a joint motion to withdraw his "application for admission"). The Court explained: "But the court is not persuaded that the Immigration and Nationality Act permits the withdrawal of Petitioner's application for admission in the way the government has described; indeed, the Ninth Circuit appeared skeptical in *Rodriguez Vazquez* that a noncitizen in Petitioner's position—that is, present in the interior of the country on parole—could withdraw their application pursuant to § 1225(a)(4)." *David R.F.*, 2026 WL 2365345, at *3; *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1176 n.1 (9th Cir. 2026) ("Nor is it apparent that § 1225(a)(4), a form of discretionary relief that benefits aliens, is designed to operate beyond aliens arriving at the border or a port of entry.") (citing *Cisneros-Resendiz*, 656 F.3d at 1020) ("[A]n IJ may grant an alien's request for withdrawal only if . . . the alien is an arriving alien") (emphasis added).

Indeed, *Cisneros-Resendiz* and *Matter of Gutierrez* suggests that § 1225(a)(4) is typically invoked when a noncitizen *attempts* to enter the United States by means of a fraudulent document, or without valid entry documents; not when a noncitizen presents themselves at a port of entry and is released by immigration officials into the interior of the country on parole. *See Cisneros-Resendiz*, 656 F.3d at 1019–20; *Matter of Gutierrez*, 19 I&N Dec. at 563–64 (involving

an individual who attempted to enter the United States at San Francisco International Airport by means of a fraudulent document); *see also In Re: Harry Twum-Danso*, 2009 WL 888521, at *1 (BIA Mar. 16, 2009) ("The respondent was charged with seeking to procure a visa or admission by fraud . . . and with being an intending immigrant with no valid immigrant visa or entry document"). As the court in *Jacobo-Ramirez* best explained, "Section 1225(a)(4) codified a longstanding mechanism for noncitizens who have not yet entered the country to withdraw an application for admission and depart immediately to avoid the entry of a removal order. . . This statutory withdrawal is not available to [c]lass [m]embers, because they already entered the U.S. without inspection and are not "arriving aliens." *Jacobo-Ramirez v. Mullin*, 834 F. Supp. 3d 1073, 1107 (D. Nev. 2026) (internal citations omitted) (explaining that class members are instead entitled to a distinct form of discretionary relief to avoid removal proceedings and other statutory penalties—namely, voluntary departure under 8 U.S.C. § 1229c). Thus, the Court concludes that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(a)(4) and 8 C.F.R. § 1240.1(d).

### C. Petitioner's Re-Detention Without Pre-Deprivation Notice or Hearing Violates Due Process

Time and again, this Court and others have found that when a petitioner is encountered at the border and subsequently released on parole, that individual is *not* an "applicant for admission" under 8 U.S.C. § 1225, but is instead detained pursuant to 8 U.S.C. § 1226(a). *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1165–72 (9th Cir. 2026); *J.S.H.M. v. Wofford*, No. 1:25-CV-01309-JLT-SKO, 2025 WL 2938808, at *1, 3–7, 10–15 (E.D. Cal. Oct. 16, 2025); *Ortiz Donis v. Chestnut,* No. 1:25-CV-01228-JLT-SAB, 2025 WL 32879514 (E.D. Cal. Oct. 9, 2025); *M.R.R. v. Chestnut*, No. 1:25-CV-01517-JLT, 2025 WL 3265446 (E.D. Cal. Nov. 24, 2025); *Espinoza v. Kaiser*, No. 1:25-CV-01101 JLT SKO, 2025 WL 2581185 (E.D. Cal. Sept. 5, 2025); *Aguilera v. Albarran*, No. 1:25-CV-01619 JLT SAB, 2025 WL 3485016 (E.D. Cal. Dec. 4, 2025); *Garcia v. Chestnut*, No. 1:25-CV-01907-JLT-CDB, 2025 WL 3771348 (E.D. Cal. Dec. 31, 2025); *Carlos v. Chestnut*, No. 1:26-CV-00007-JLT-SKO, 2026 WL 145889 (E.D. Cal. Jan. 20, 2026). Respondent offers little to rebut Petitioner's due process claim and do not provide any

justification for detaining Petitioner. Petitioner has no criminal history and there is no indication in the record that he has violated a condition of parole. (*See* Doc. 3 at 2; Doc. 8-1 at 2–3.) Therefore, the Court finds that Petitioner's re-detention without a pre-deprivation hearing violated the Due Process Clause of the Fifth Amendment.

For the foregoing reasons, the Court **ORDERS:**

1. The petition for writ of habeas corpus (Doc. 1) is **GRANTED**. Petitioner **SHALL** be **RELEASED IMMEDIATELY.**

2. The motion for temporary restraining order (Doc. 3) is **DENIED** as **MOOT**.

3. The motion to appoint counsel (Doc. 2) is **DENIED** as **MOOT**.[2]

4. Respondent is **ENJOINED** and **RESTRAINED** from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven days in advance and holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified[3];

5. The Clerk of Court is directed to serve the California City Detention Facility in California City, California with a copy of this Order.

6. The Clerk of Court is directed to close this case and enter judgment for Petitioner.

IT IS SO ORDERED.

Dated: October 26, 2026

UNITED STATES DISTRICT JUDGE

---

[2] Petitioner also asks this Court to appoint counsel in his habeas action. (Doc. 2.) Title 18 U.S.C. § 3006A(a)(2)(B) authorizes the appointment of counsel at any stage of the case if "the interests of justice so require." As explained above, because the Court **GRANTS** the habeas petition and orders Petitioner's immediate release, the motion to appoint counsel is now **MOOT**.

[3] If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements set forth here **SHALL** be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondent may detain Petitioner for the sole and limited purpose of executing removal. In this event, Respondent's **SHALL** provide a bond hearing in the timeframe required by law.